UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United states of America,

       Plaintiff,                Case No.  25-CR-20086

                                  Hon. Gershwin A. Drain

v.

Christopher Clay Pierce,

       Defendant.

_____/

**United States' Supplemental Notice of Intent to Offer
Evidence of Uncharged Conduct at Trial**

## Introduction

On June 16, 2025, the United States filed a notice of intent to offer evidence at trial under Federal Rule of Evidence 404(b). (ECF No. 32, PageID.91-100). The United States now gives notice of its intent to supplement its prior filing and present additional evidence of 1.) Pierce's purchase of firearms accessories, 2.) videos of a firearm, and a paper shooting target silhouette recovered from Pierce's phone, 3.) multiple Internet searches related to firearms, 4.) Pierce's possession of firearms on the date of his arrest, 5.) Pierce's comments in response to YouTube videos, 6.) additional threats by Pierce to the President of the United States and his ensuing interview with the FBI, and 7.) a personal protection order (PPO) that was issued against Pierce in September 2022 (and renewed through September 2024) due to Pierce's threats to kill another person. This evidence is relevant to, and probative of the crimes charged in the Second Superseding Indictment. (ECF No. 49, PageID.214-22).

## Procedural History

The Second Superseding Indictment charges Pierce with making interstate threats against different individuals and entities on five separate occasions between December 2023, and October 2024, in violation of 18 U.S.C. § 875(c). (ECF No. 49, PageID.214-22). To prove each of the charged threats against Pierce, the government must prove that: (1) he knowingly transmitted a communication; (2) the communication contained a threat to injure a particular individual or group of individuals; (3) he transmitted the communication for the purpose of making a threat, knowing the communication would be viewed as a threat, or with recklessness that the communication would be viewed as a threat; and (4) the communication was transmitted in interstate commerce. *See* 6th Circuit Pattern Jury Instruction 18.01; *Counterman v. Colorado*, 600 U.S. 66, 78-80 (2023) (recognizing recklessness as one of three alternative mental state requirements in an interstate threats case).

In its prior notice, the government sought to introduce evidence pursuant to Rule 404(b) of uncharged threats made by Pierce to demonstrate his intent, knowledge, and absence of mistake in committing

3

the crimes charged in the indictment. Fed. R. Crim. P. 404(b); (ECF No. 32, PageID.91-98).

Similarly, this supplemental notice seeks to admit additional evidence in its case-in-chief under two separate but related theories. *First*, Pierce's 2024 purchase of firearms accessories, possession of firearm-related videos, ownership of firearms, as well as his Goggle searches for guns, and his threats and comments on YouTube are intrinsic evidence of Pierce's subjective intent to commit the crimes charged in the indictment. *Counterman*, 600 U.S. at 78-80. Alternatively, this evidence is admissible under Rule 404(b) because it is probative of Pierce's intent, knowledge, and absence of mistake in committing these crimes. FRE 404(b).

*Second*, the United States intends to admit evidence of an additional threat made by Pierce in March 2021 and his subsequent contact with law enforcement, as well as the September 2022 PPO, pursuant to Rule 404(b). Consistent with the government's prior notice (ECF No. 32), this evidence is also admissible as evidence of Pierce's intent, knowledge, and absence of mistake. FRE 404(b).

4

## Law and Argument

When the offered evidence is "'inextricably intertwined' with evidence of the crime charged," *United States v. Everett*, 270 F.3d 986, 992 (6th Cir. 2001), or when the acts are "intrinsic," or "part of a continuing pattern of illegal activity," *United States v. Barnes*, 49 F.3d 1144, 1149 (6th Cir. 1995), Rule 404(b) does not apply. *United States v. Rozin*, 664 F.3d 1052, 1063 (6th Cir. 2012). Also referred to as *res gestae*, this evidence "consists of those other acts…[which necessarily]…complete the story of the charged offense." *See United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000)(noting it is well established that *res gestae* evidence does not implicate 404(b)). Moreover, these intrinsic acts are "'so blended or connected, with the [conduct] on trial as that proof of one …tends to logically prove an element of the crime charged.'" *United States v. Till*, 434 F.3d 880, 883 (6th Cir. 2006) (quoting *United States v. Bass*, 794 F.2d 1305, 1312 (8th Cir. 1986)).

And even in cases where *res gestae* does not apply, Rule 404(b) allows the admission of these prior acts, as well as additional uncharged conduct for a permissible purpose, such as, "intent,…knowledge,…[or] absence of mistake." FRE 404(b). Rule 404(b) is a rule of "inclusion rather

5

than exclusion" *United Staes v. Vance*, 871 F.2d 572, 575 (6th Cir. 1989), and allows for the admission of "acts prior to and subsequent to the offense charged." *United States v. Perry*, 438 F.3d 642 (6th Cir. 2006)(citing *United States v. Pollard*, 778 F.2d 1177, 1179-80 (6th Cir. 1985)).

A. <ins>Pierce's interest in, possession and use of firearms and firearms accessories as well as his YouTube comments are intrinsic to the conduct charged in the indictment.</ins>

Both before and during the time Pierce made the threats charged in Counts Two through Five of the Second Superseding Indictment (ECF No. 49, PageID.215-20), he purchased accessories for his guns. Law enforcement found digital receipts on Pierce's cellphone from June 2024, and October 2024, reflecting the purchase of a fully assembled pistol slide, and a firearm muzzle. Notably, Pierce ordered the muzzle the day after FBI agents interviewed him about his threats to ActBlue. (ECF No. 49, PageID.218-19)

During this same period, videos of a pistol and a shooting target were were saved to Pierce's phone:

6





On Pierce's phone, agents also found Google searches for handguns and rifles between October 19, 2024, and October 31, 2024. A sample of those Internet queries follows:

| Search Term | URL | Date/Time |
|---|---|---|
| glock 43x rose gold | https://www.google.com/search?q=glock+43x+ro... | 10/20/2024 8:53:42.320 PM |
| sig sauer rose 9mm | https://www.google.com/search?q=sig+sauer+ros... | 10/20/2024 8:53:15.573 PM |
| sig sauer rose 9mm | https://www.google.com/search?q=sig+sauer+ros... | 10/20/2024 8:36:07.759 PM |
| 380 glock | https://www.google.com/search?q=380+glock&cli... | 10/21/2024 1:52:51.264 PM |
| glock 43 | https://www.google.com/search?q=glock+43&clie... | 10/21/2024 1:51:20.171 PM |
| chris kyle's longest shot | https://www.google.com/search?q=chris+kyle%27... | 10/23/2024 12:42:30.488... |
| quality 338 Lappula magnum | https://www.google.com/search?q=quality+338+L... | 10/23/2024 12:45:38.705... |
| galco holsters | https://www.google.com/search?q=galco+holsters... | 10/31/2024 8:01:22.680 PM |
| m14 rifle | https://www.google.com/search?q=m14+rifle&clie... | 10/31/2024 11:37:13.378 PM |

Consistent with Pierce's videos, purchase history, and general interest in guns, when law enforcement arrested Pierce and searched his home on November 4, 2024, they found Pierce with seven firearms—three handguns, and four AR platform rifles.

This proffered evidence spans a five-month period (June 2024-November 4, 2024) – all of which is within or shortly after the period charged in the indictment. (ECF No. 49, PageID.214-22). Accordingly, this evidence is

admissible as part of a single criminal episode that puts the charges in context. *Hardy*, 228 F.3d at 748 (finding proper background evidence has a causal, temporal or spatial connection with the charged offenses); *United States v. Daulton,* 266 Fed.Appx. 381, 384 (6th Cir.2008) (in tax fraud case, other act evidence, including statements of clients from years not charged in the indictment, was intrinsic as part of a "continuing criminal episode").

This evidence is also admissible because it is "directly probative of the charged offense." *Hardy*, 228 F.3d at 748. Specifically, the jury will be asked to determine Pierce's "subjective mental state when he issued the threats." *United States v. Miah*, 120 F.4th 99, 111 (3rd Cir. 2024); 6th Circuit Pattern Jury Instruction 18.01. In *Miah*, the Third Circuit admitted evidence of the defendant's familiarity with firearms and use of tactical gear as probative of the "knowledge and intent" behind his threats to bomb FBI headquarters and injure federal agents. *Id.*[1]

---

[1] While the theory of admissibility in *Miah* rested on Rule 404(b), the Court here could, under a similar theory, find this evidence intrinsic to the charged conduct. *See also United States v. Long,* 450 Fed.Appx. 457, 462–63 (6th Cir.2011) (in conspiracy to unlawfully discharge industrial wastewater, evidence of prohibited discharges occurring before those charged in the indictment was properly admitted as res gestae as part of a continuing pattern of illegal activity); *United States v. Cornell,* 162 Fed.Appx. 404, 411 (6th Cir.2006), *cert. denied,* 549 U.S. 828, 127 S.Ct. 44, 166 L.Ed.2d 47 (2006) (in drug conspiracy case, evidence that the defendant possessed a firearm and robbed two of the government's witnesses during the period of the conspiracy was proper res gestae because it demonstrated the defendant's continued involvement in the conspiracy); *United States v. Comer,* 93 F.3d 1271, 1277–78 (6th Cir.1996) (finding that evidence that defendant

Similarly, Pierce's extensive association with and possession of guns and gun accessories is relevant to a jury's determination of Pierce's knowledge and subjective intent when he sent the threats charged in the indictment. For instance, Pierce threatened to "put[] a bullet between [the] eyes" of ATF agents (Count One, ECF No. 49, PageID.215), bragged that he is a "trained killer" (Counts Three and Four, *Id.*, PageID.217, 218) who would "laserhead" his target's children and wife at night (Count Two, *Id.*, PageID.215), and promised to "wipe" people's children and grandchildren "from the face of the planet" (Count Five, *Id.*, PageID.219). *See* 6th Circuit Pattern Jury Instruction 18.01; *Counterman v. Colorado*, 600 U.S. 66, 78-80 (2023). Evidence of Pierce's ownership and purchase of guns and gun accessories, as well as his Internet searches for firearms is therefore intrinsic to the charged conduct because it directly proves a necessary element of the crimes in the indictment—i.e., Pierce's "mental state." *Till*, 434 F.3d at 883; *Miah*, 120 F.4th at 111; 6th Circuit Pattern Jury Instruction 18.01.

Similarly, Pierce's extensive commentary on YouTube should be admitted as intrinsic to the charged offenses. "The jury is entitled to know the 'setting' of a case. It cannot be expected to make its decision in a void

---

engaged in an ongoing scheme to steal jewelry using the mails directly related to the crime charged and thus did not pose a rule 404(b) problem)

10

without knowledge of the time, place and circumstances of the acts which form the basis of the charge." *United States v. Roberts*, 548 F.2d 665, 667 (6th Cir. 1977). Between September 14, 2024, and October 16, 2024, (during the time he committed Counts Three, Four, and Five), Pierce used his pierceoverheaddoor account to post dozens of threats and firearm-related comments to YouTube videos online. The government intends to admit seven of these statements as intrinsic to the crimes in the indictment. (Proposed Trial Exhs. 23A-23G).

Pierce's YouTube comments have a temporal and causal connection to his charged conduct. Each of the posts was made within months of the threats in the indictment (December 2023-October 2024), and all the proffered evidence relates to, and provides context for, the content of the charges. *Hardy*, 228 F.3d at 748; (ECF No. 49, PageID.214-20). In four of the comments, Pierce expressed his animosity for ATF—the target of the threats charged in Count One—as well as his amenability to the use of violent force against ATF agents. (ECF No. 49, PageID.214-15); Exhs. 23A, 23C, 23E, 23F, 23G. For example, on September 14, 2024, Pierce declared that the ATF would be "hunted down like the [rabid] dogs they are!" (Exh. 23A). Similarly, on October 7, 2024, Pierce threatened that "anything [wearing] an ATF badge

11

will be put on the ground permanently." (Exh. 23E). These comments provide the "setting" and shed light on the motivation for the threats of violence—especially gun violence—charged in the indictment. (ECF No. 49, PageID.214-22); *Roberts*, 548 F.2d at 667; *Hardy*, 228 F.3d at 748.

Pierce also used YouTube as a public forum to reiterate his affiliation with American Patriot Three (AP3), a militia group he associated with in Counts Two, Three, Four, and Five. (*Id.*, PageID.215-20). For example, on September 30, 2024, Pierce encouraged his YouTube audience to "google" American Patriot Three to "find out exactly what they're capable of." (Exhs. 23B). Six days later, on October 5, 2024, Pierce declared, "There is no such thing as protected VPN…AP3 is everywhere." (Exh. 23D). These statements are probative of Pierce's motivation for, and subjective intent to threaten a militia-style assault on his opponents.

But even if this Court determined that this evidence is not *res gestae*, under Federal Rule of Evidence 404(b), it is admissible to show knowledge, intent, and absence of mistake. Rule 404(b) bars evidence of "a crime, wrong, or other act . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b). It is, however, admissible if offered for a permissible

12

purpose.

The Sixth Circuit engages in a three-step analysis of 404(b) evidence. *United States v. Mack*, 729 F.3d 594, 601 (6th Cir. 2013). First, the court must find that the other acts actually occurred. Here, Pierce claims ownership of the phone on which law enforcement found most of the proffered evidence. Similarly, on the date of the search warrant, Pierce admitted to having firearms in a safe in his home. Lastly, the comments posted to YouTube by "pierceoverheaddoor" is an account for which Pierce is the listed subscriber. The name of the account also correlates to Pierce's garage door repair business.

Second, the court must determine if the act could be admitted in support of one of the purposes allowed by Rule 404(b). Again, the government must prove defendant's intent and knowledge of the charged threats. *Elonis v. United States*, 575 U.S. at 740 (2015); *Counterman*, 600 U.S. at 79. To convict Pierce of the charged threats, the government must prove one of three mental state requirements: namely, that he transmitted the communication: (1) "for the purpose of issuing a threat," *Elonis*, 575 U.S. at 740; (2) "with knowledge that the communication will be viewed as a threat," *Id.*; or (3) "recklessly." *Counterman*, 600 U.S. at 79. In the true

13

threats context, the Supreme Court has said that acting recklessly "means that a speaker is aware 'that others could regard his statements as' threatening violence and 'delivers them anyway.'" *Id.* (quoting *Elonis*, 575 U.S. at 746).

The proffered evidence is probative of Pierce's intent, knowledge, and absence of mistake. Undoubtedly, Pierce's interest in and possession of guns and gun accessories coupled with the threats and comments he made on YouTube show that Pierce's charged threats were made knowingly and purposefully, or, at the very least, recklessly. *Counterman*, 600 U.S. at 79. Moreover, this repeated and consistent pattern of threatening conduct demonstrates that Pierce's crimes were not accidental and rebuts Pierce's repeated assertions to law enforcement that his messages were not threatening.

The final step in the 404(b) analysis is whether the probative value of the evidence is substantially outweighed by its prejudicial effect. It is not. Pierce's interest in and possession of firearms, and his YouTube comments are not more prejudicial than the charged threats which Pierce admitted to making when he was interviewed by FBI agents on October 30, 2024. *United States v. Libby-Tipton,* 948 F.3d 694, 701 (6th Cir. 2020). At that interview,

14

Pierce confessed to making the threats in Count Four in which he claims, among other things, that American Patriot Three "paints targets on your backs and the backs of your families." (ECF No. 49, PageID.219). Pierce's admissions are among the evidence the jury will hear at trial. Accordingly, other evidence of similar online behavior coupled with the capacity to carry out his threats is not unduly prejudicial. This evidence should be admitted as intrinsic to the charged conduct, and if not, as evidence of Pierce's intent, knowledge, and absence of mistake under Rule 404(b). *United States v. Champ*, 2016 WL 4154710, at *3 (E.D. Tenn. Aug. 4, 2016).

### B. Pierce's additional threats over email as well as the September 2022 PPO are admissible 404(b) evidence.

Additionally, evidence of other uncharged threats made by Pierce, as well as the circumstances surrounding the September 2022 PPO through it's September 2024 renewal, are admissible to show his knowledge, intent, and absence of mistake. FRE 404(b).

First, the FBI's interview of Pierce at his home in September 2022 (ECF No. 32, PageID.93-94) was not the first law enforcement response to Pierce's threats. On March 28, 2021, Pierce emailed Gannett.com, the parent company of USA Today, to threaten the Biden Administration not to

15

segregate unvaccinated people, or "[t]here will be no safe place for [Biden] or his family to hide…[a]nd if [Biden] thinks the Secret Service will be able to protect him he will be dead fucking wrong." Two days later, FBI and Secret Service agents spoke with Pierce on the phone and at his home and admonished him against threatening the President.

Likewise, on September 19, 2022, a Jackson County resident (PERSON-1) applied for a PPO against Pierce. In the narrative section of his application, PERSON-1 gave the following reason for needing protection:

> [Pierce] has threatened to have people come to my house to kill me and my mother and that the police won't respond quick enough to stop it, that he has people with my biracial niece's picture to "kill that little n*glet and her n*gger boyfriend." He has threatened to end my enter [sic] family. All of this is on video. He also threatened to plant/falsify evidence to have me jailed then killed in person.

On September 21, 2022, a judge for the Jackson County 4th Judicial Circuit entered a protective order prohibiting Pierce from contacting PERSON-1 and possessing firearms, among other proscriptions. On multiple court documents, PERSON-1 explained his fear of Pierce was in part due to Pierce's possession of firearms. On September 19, 2023, the court extended the PPO, including the prohibition on possession of firearms, through September 21, 2024.

As with the uncharged conduct in the United States' prior notice, here, evidence of Pierce's other, uncharged threatening communications is relevant to his intent, knowledge, and absence of mistake. *Mack*, 729 F.3d at 601. Law enforcement's warnings to Pierce in both March 2021, and September 2022, as well as the September 2022 PPO prohibiting him from making further threats, demonstrate that Pierce was duly warned and on notice that the substance of his offline and online communications would or could be viewed as threatening. As such, these uncharged threats demonstrate that Pierce knew and likely intended his subsequent online communications of similar content and tone to be viewed as threatening. *See, e.g., United States v. LaFontaine*, 847 F.3d 974, 981 (8th Cir. 2017) (upholding trial court's admission of uncharged threat two years before charged threat where defendant was confronted about threatening communication and claimed he did not intend the prior communication to be a threat); *see also Champ*, 2016 WL 4154710, at *3 (E.D. Tenn. Aug. 4, 2016); *United States v. Houston*, 2015 WL 6449519, at *7 (E.D. Tenn. Oct. 26, 2015).

Relatedly, Pierce's repeated threatening communications, and the 2022 PPO, also show that Pierce did not make the charged threats by mistake. *See, e.g., LaFontaine*, 847 F.3d at 981; *Houston*, 2015 WL 6449519, at *7. This is

17

relevant to counter Pierce's claims to FBI agents investigating the October 2, 2024 threats to Act Blue (Count Four) that Pierce did not consider his communications threatening. And the fact that a Jackson County court prohibited Pierce from possessing firearms for a two-year period reinforces the government's argument that Pierce made a true threat against the ATF in Count One, in part, because of his disdain for gun regulations. *See, e.g.*, *Champ*, 2016 WL 4154710, at *3 (evidence of an earlier incident is relevant to show absence of mistake or accident; defendant was not simply asking rhetorical questions or joking).

Notably, the government is seeking to introduce only a small portion of the overall known online threats made by Pierce—which consists of potentially hundreds of violent online threats made over the course of three years—as 404(b) evidence. Similarly, the September 2022 incident is not the only time Pierce received a PPO for online threats. In 2021, a customer of Pierce's garage door business applied for a PPO after the customer left an unfavorable online review. In response, Pierce threatened the customer and contacted the customer's employer, falsely accusing the customer of being a "child molester." Rather than seeking to introduce evidence of all of Pierce's prior bad conduct, the government's proposed 404(b) evidence is limited in

18

scope and sufficiently tailored to the needs of this case: to prove Pierce's intent, knowledge, and absence of mistake in making the five specific threats charged in the Second Superseding Indictment.

As with the other proffered evidence, this evidence is not unduly prejudicial. Pierce's threats to Gannett and the September 2022 PPO are similar, if not less detrimental, than the charged conduct, and their probative value outweighs any danger of unfair prejudice.

## Conclusion

The United States has complied with the notice requirement of Fed. R. Evid. 404(b) by submitting this notice. Should the defendant move to exclude this evidence, the United States reserves the right to litigate the motion and further supplement the information in this notice.

Respectfully submitted,

JEROME F. GORGON, JR.
United States Attorney

*s/ Eaton P. Brown*
Eaton P. Brown
Zachary A. Zurek
Assistant United States Attorneys
211 W. Fort St., Suite 2001
Detroit, MI 48226
(313) 226-9100
Eaton.Brown@usdoj.gov

Dated: December 4, 2025

## **Certificate of Service**

I certify that on December 4, 2025, I electronically filed the foregoing document with the Clerk of the Court of the Eastern District of Michigan using the ECF system which will send notification of such filing to counsel of record.

                                       *s/ Eaton P. Brown*
                                       Eaton P. Brown
                                       Assistant United States Attorney